UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

|  | Bankruptcy No. | Chapter 13 |
|---|---|---|
|  | Adversary No. | 24-42904 |

In Re:

Steve and Jessie Brotherton,

        Debtors,

Steve and Jessie Brotherton,

        Plaintiffs,

vs.

Carly J. Winscher,

        Defendant,

**ADVERSARY COMPLAINT**

As and for their Adversary Complaint, Plaintiffs Steve and Jessie Brotherton ("Plaintiffs") state and allege as follows:

## JURISDICTION AND VENUE

1. Plaintiffs bring this adversary complaint in the above-captioned case, which was filed on October 24, 2024, under Chapter 13 of Title 11, United States Code.

2. Pursuant to Federal Rules of Bankruptcy Procedure, Part VII – Adversary Proceedings, Rule 7008, Plaintiffs consent to entry of final orders or judgment by this Bankruptcy Court.

3. The Court, therefore, has jurisdiction over this proceeding, which arises in a case under the Bankruptcy Code and concerns debts and property of Plaintiffs and/or the

bankruptcy estate, pursuant to 28 U.S.C. § 1334. This is a core proceeding under 11 U.S.C. § 157(b)(2)(F) and venue is proper under 28 U.S.C. § 1409(a).

## **INTRODUCTION**

4. This Complaint seeks to remedy violations of the Stay provisions of the Bankruptcy Code by Defendant above-named, who affirmatively continued collection activity after multiple notifications of the filing of a Chapter 13 Voluntary Petition in this case, in violation of the Stay provisions of the Bankruptcy Code, 11 U.S.C. § 362(a)(6).

## **FACTS**

5. Plaintiffs are natural persons and debtors in this proceeding whose debts are "consumer debts" as defined in 11 USC § 101(8).

6. Defendant Carly J. Winscher (hereinafter "Defendant") is an individual residing at 28052 63rd Street, Royalton, MN 56373, and at all times relevant herein conducted business in this district. Defendant is a pre-petition creditor, as the debt he is collecting originated prior to the filing of the aforesaid bankruptcy case.

## **EVENTS PRIOR TO PLAINTFFS BANKRUPTCY FILING**

7. On June 24, 2024, Plaintiffs incurred a financial obligation with Defendant, namely a rented Hereford bull.

8. On or around June 24, 2024, Plaintiffs also came to a verbal agreement to purchase four (4) bred heifers from Defendant. Plaintiffs provided Defendant with three (3)

large checks to hold as payment and eventually cash once Plaintiffs could ensure the checks would go through.

9. A few weeks later, worried that Defendant would cash the check prior to Plaintiffs assuring him they would go through, Plaintiffs put a stop payment on the checks and made an effort to set up an alternative payment arrangement with Defendant.

10. In or around late August and early September 2024, Plaintiffs were working with the Farm Service Agency (FSA) to manage the multitude of debts Plaintiffs had incurred in running their farm. Plaintiffs were informed they would need to manage their additional outstanding debts in order to make progress with their FSA loans.

11. In October 2024, after much deliberation, Plaintiffs decided that their best option was to file a petition under Chapter 13 of the Bankruptcy code.

12. In anticipation of filing, Plaintiffs informed Defendant that they would be filing bankruptcy and including their debts with Defendant in the petition.

13. In response, Defendant called Plaintiffs and sent numerous text messages with offensive messaging.

14. On October 17, 2024, Defendant sent Plaintiffs a text message stating that he was going to be pressing charges for Plaintiffs putting a stop payment on the check and breaking their signed agreement. Defendant insinuated that Plaintiffs would be facing jail time and went on to state that Plaintiffs had better have all his cattle or he would go after them for theft. Defendant further stated that he bets Plaintiffs were proud of themselves and that their neighbors had claimed Plaintiffs didn't pay their bills and were liars.

15. On October 17, 2024, Plaintiffs explained that they had been attempting to set up an alternative payment arrangement for the cattle and stated that they only had a contract for the bull, not for the cattle. Plaintiffs then provided Defendant with their bankruptcy attorneys phone number.

16. On October 17, 2024, Defendant also called Plaintiffs four times.

17. On October 18, 2024 at 3:59 AM, Defendant sent Plaintiffs a text message stating the following:

> "You owe me money we are leaving after chores"

## PLAINTFFS BANKRUPTCY FILING AND EVENTS THAT FOLLOWED

18. On October 24, 2024, Plaintiffs filed a petition under Chapter 13 of the Bankruptcy Code in an effort to handle all of their debts with manageable payments. Plaintiffs' debts with Defendant were included in this petition.

19. On October 27, 2024, Defendant received notice of Plaintiffs' Chapter 13 Bankruptcy via first class mail from the Bankruptcy Noticing Center. The notice was sent to Defendant at 28052 63rd Street, Royalton, MN 56373.

20. On November 4, 2024, Plaintiffs' bankruptcy attorney, Wesley Scott, Esq., received a call from Defendant regarding the stopped check. Attorney Scott informed confirmed with Defendant that Plaintiffs had filed bankruptcy.

21. On December 24, 2024, at 11:58 AM, despite having received notice of Plaintiffs bankruptcy, Defendant called Plaintiffs and left a threatening voicemail stating that he was on his way to their property.

22. On December 24, 2024, at 12:00 PM, despite having received notice of Plaintiffs bankruptcy, Defendant sent Plaintiffs a text message stating the following:

> "Steve I called well ..anyway I'm in your area today so I plan on stopping. Thanks"

23. In response to Defendant's text message on Christmas Eve, Plaintiffs responded by text:

> "Carly you can't stop here during the bankruptcy sorry"

24. Defendant continued to harass Plaintiffs. Defendant followed up to Plaintiffs' response, texting the following:

> "I have papers ….see ya then"

25. Defendant's threats caused Plaintiffs to experience severe frustration and anxiety on Christmas Eve and for the duration of the holiday season. Defendants threats put Plaintiffs on edge believing that Defendant at any moment would show up at their house despite being aware of their Bankruptcy and the Bankruptcy Stay provisions.

26. Plaintiffs are unaware if Defendant ever followed through on his threat to appear at their residence over the holiday season of 2024.

27. On February 17, 2025, Defendant, through his attorney, Joseph Krueger, Esq., contacted Attorney Scott, and requested he send notice of Plaintiffs' bankruptcy to their office.

28. On February 17, 2025, Attorney Scott provided Attorney Krueger with Notice of Plaintiffs' Chapter 13 bankruptcy and an Order Confirming Plaintiffs' Chapter 13

Plan. Attorney Scott also demanded that Defendant must cease and desist all collection efforts or his client may face claims against him in Bankruptcy Court.

29. On April 9, 2025, despite having received multiple notices of Plaintiffs' bankruptcy, Defendant came to Plaintiffs' property in his truck with a stock trailer attached.

30. Upon arrival at Plaintiffs' property, Defendant began shouting at Plaintiffs' nine-year-old son, stating the following:

> "Where the hell are your parents! You tell me now!"

31. Plaintiffs' son was frightened to the point of not being able to respond. Hearing the commotion, Plaintiff Jessie ran outside to her crying son. Defendant remained in the driver's seat of his truck. As Plaintiff Jessie held her crying son, she told Defendant that he could not be there and that he was breaking bankruptcy law by just showing up.

32. Defendant responded to Plaintiff Jessie, yelling that he was there for his bull and that he had been contacted by Plaintiff Steve by a phone call and text message. This statement was not true. Plaintiffs had not contacted Defendant since December 24, 2024.

33. Defendant, who appeared to be on the phone with someone, stated that Plaintiffs were being recorded and that he was on the phone with the sheriff's office. Defendant demanded Plaintiffs return his bull.

34. Plaintiffs declined this demand stating that the bull was still on lease until June 24, 2025. Plaintiffs also explained that Defendant had to make arrangements to pick up

the bull with their bankruptcy attorney so that a sheriff could be present at the time of pick up.

35. Defendant proceeded to shout at Plaintiffs, yelling profanities and calling Plaintiffs liars and thieves. Additionally, Defendant called Plaintiffs bad parents and that they were a bad example for their kids. Plaintiffs' son was still standing outside at this time and heard this interaction. Defendant also said that Plaintiffs were going to stiff him on his bull just like they did on the other stuff they owe him for.

36. Plaintiff Jessie told Defendant that she was going to call the sheriff's office because he was trespassing and has been asked to leave and previously told that he was not allowed to be on their property. As Plaintiff Jessie was calling, Defendant began to leave. Before Defendant left, Plaintiff took pictures of him on the property.

37. A deputy arrived on Plaintiffs' property shortly after to get information for an Order of No Trespass. The deputy provided Plaintiffs with a case number, 25002850, and stated the report would be complete in three (3) business days. Additionally, the deputy stated that they would call the County where Defendant resided to have him served with the No Trespass.

38. As of the date of this complaint, Defendant's collection campaign has included multiple contacts after notice of Plaintiffs' bankruptcy, sending multiple threatening text messages, and calling Plaintiff on December 24, 2024. Additionally, on April 9, 2025, Defendant unlawfully followed through on his Christmas Eve threat to appear at their house and, in fact, went to Plaintiffs home in an effort to take back

possession of the bull. Defendant's actions while unlawfully trespassing at Plaintiffs' home were intentional, wreckless, and actionable.

39. Defendant's actions following October 24, 2024, the date that the Court contacted Defendant providing notice of Plaintiffs' Bankruptcy, were willful and in full knowledge of Plaintiffs' bankruptcy filing and the Bankruptcy Court's Automatic Stay. Also, Attorney Scott provided Defendant confirmation of Plaintiffs' bankruptcy on November 4, 2024. Further, Defendant's attorney was provided additional confirmation of Plaintiffs' bankruptcy on February 17, 2025.

40. In its actions set forth above, Defendant has violated the stay provisions of the Bankruptcy Code, including but not limited to 11 U.S.C. §§ 362(a)(3) and 362(a)(6).

41. Plaintiffs have suffered actual damages in the form of emotional distress because of Defendant's unlawful collection communications and trespass at their home. Plaintiffs believed that they were protected by the Bankruptcy Code. Because of Defendant's unlawful and continued collection campaign, Plaintiffs have suffered sleeplessness, fear of answering the telephone and door, nervousness, restlessness, irritability, feelings of hopelessness, guilt, worthlessness, embarrassment when speaking with friends and family, physical symptoms including headaches, and a negative impact on their job.

## COUNT I.

## VIOLATIONS OF THE BANKRUPTCY STAY PROVISION – 11 U.S.C. § 362(a)(3)

42. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

43. Defendant violated 11 U.S.C. § 362(a)(3) by committing acts to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate, in its attempts to collect prepetition debt.

44. As a result of Defendant's violations of 11 U.S.C. § 362(a)(3), Plaintiffs have suffered actual damages not limited to sleeplessness, fear of answering the telephone and door, nervousness, restlessness, irritability, feelings of hopelessness, guilt, worthlessness, embarrassment when speaking with friends and family, physical symptoms including headaches, and a negative impact on their job in an amount to be determined at trial.

45. Defendant's conduct, actions, and inactions were willful, rendering it liable for damages, including costs and attorneys' fees, and punitive damages in an amount to be determined by the Court pursuant to 11 U.S.C. § 362(k)(1).

## COUNT II.

## VIOLATIONS OF THE BANKRUPTCY STAY PROVISION – 11 U.S.C. § 362(a)(6)

46. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

47. Defendant violated 11 U.S.C. § 362(a)(6) by committing acts to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

48. As a result of Defendant's violations of 11 U.S.C. § 362(a)(6), Plaintiffs have suffered actual damages not limited to sleeplessness, fear of answering the telephone and door, nervousness, restlessness, irritability, feelings of hopelessness, guilt, worthlessness, embarrassment when speaking with friends and family, physical symptoms including headaches, and a negative impact on their job in an amount to be determined at trial.

49. Defendant's conduct, actions, and inactions were willful, rendering it liable for damages, including costs and attorneys' fees, and punitive damages pursuant to 11 U.S.C. § 362(k)(1).

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiffs pray that the Court:**

a. Hold Defendant in contempt of court for knowingly, willfully, and deliberately violating 11 U.S.C. §§ 362(a)(3) and 362(a)(6);

b. Order Defendant to cease all other collection efforts against Plaintiffs;

c. Award to Plaintiffs compensatory damages, sanctions, punitive damages, and attorney's fees for contempt of court and pursuant to 11 U.S.C. §§ 105(a) and 362(k); and

d. Order all other relief that is just and proper.

Respectfully submitted,

Dated: April 16, 2025  /e/ Mark L. Vavreck

Mark L. Vavreck, Esq.
Attorney I.D. #: 0318619
Attorney for Debtor/Plaintiff
VAVRECK LAW, LLC
7900 International Drive
Suite 300 PMB 3345
Bloomington, MN 55425
Telephone: (612) 373-7000
Facsimile: (612) 659-9220
Email: mark@vavrecklaw.com

Wesley W. Scott, Esq.
Attorney I.D. #: 0264787
Attorney for Debtor/Plaintiff
LIFEBACK LAW FIRM, P.A.
13 7th Avenue South
Saint Cloud, MN 56301
Telephone: (320) 258-7284
Email: wes@lifebacklaw.com

# VERIFICATION OF COMPLAINT AND DECLARATION BY PLAINTIFFS

I, Steve Brotherton, declare under penalty of perjury, as provided for by the laws of the United States, 28 U.S.C. § 1746, that the following statements are true and correct:

1. I am the Plaintiff in this civil proceeding.

2. I have read the above-entitled civil Complaint prepared by my attorney and I believe that all of the facts contained in it are true, to the best of my knowledge, information, and belief, formed after reasonable inquiry.

3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass Defendants, cause unnecessary delay to Defendants, or create a needless increase in the cost of litigation to the Defendants named in the Complaint.

5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

Dated: April 21, 2025   /e/ Steve R. Brotherton

# VERIFICATION OF COMPLAINT AND DECLARATION BY PLAINTIFFS

I, Jessie Brotherton, declare under penalty of perjury, as provided for by the laws of the United States, 28 U.S.C. § 1746, that the following statements are true and correct:

1. I am the Plaintiff in this civil proceeding.

2. I have read the above-entitled civil Complaint prepared by my attorney and I believe that all of the facts contained in it are true, to the best of my knowledge, information, and belief, formed after reasonable inquiry.

3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass Defendants, cause unnecessary delay to Defendants, or create a needless increase in the cost of litigation to the Defendants named in the Complaint.

5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

Dated:  April 21, 2025                    /e/ Jessie L. Brotherton